IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JEREMY ROBERT MILLER,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | 3:14-CV-01668-JO<br><br>OPINION AND ORDER |

JONES, J.,

      Plaintiff Jeremy Robert Miller appeals the Commissioner's decision denying his application for supplemental security income under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

      Miller filed for SSI benefits, alleging disability beginning September 27, 2010. Pl.'s Br. 1. The ALJ applied the five-step analysis outlined in 20 C.F.R. § 416.920 to determine whether Miller was disabled. Admin. R. 22-31. The ALJ found that Miller's ability to work was adversely affected by undifferentiated schizophernia, borderline intellectual functioning, personality disorder and substance abuse. Additionally, the ALJ found that Miller did not satisfy the criteria for any of the presumptively disabling impairments listed in the regulations at 20 C.F.R. Part 404, Subpart P,

1 - OPINION AND ORDER

Appendix 1. The ALJ determined that, despite his impairments, Miller had the residual functional capacity ("RFC") to perform unskilled occupations such as janitor and laundry worker, representing a combined total of two million jobs in the national economy. Accordingly, the ALJ concluded that Miller was not disabled. Admin. R. 31.

The Appeals Council denied plaintiff's request for review on August 19, 2014. Admin. R. 1. The ALJ's decision therefore became the final agency decision, and it is now on appeal in this court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.  Claims of Error

Miller contends that the ALJ erred when analyzing Listing 12.05C for intellectual disability. Additionally, Miller claims that a remand for an award of benefits is warranted.

### II.  Listing 12.05C

To satisfy the criteria for intellectual disability under Listing 12.05C, a claimant must demonstrate three elements. First, a claimant must have a valid IQ score of 60 to 70. Second, a

claimant must have sub-average intellectual functioning with deficits in adaptive functioning initially manifested before age 22. Third, and finally, a claimant must have a physical or other mental impairment causing an additional and significant work-related limitation. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

Miller contends that the ALJ erroneously discounted the validity of the Weschler full scale IQ score of 66 found by Dr. Field, and that the ALJ failed to examine deficits in adaptive functioning before age 22. Pl. Opening Brief at 7-8. Defendants counter that there were conflicting IQ scores in the record, and that the evidence indicates that the IQ test conducted by Dr. Field is suspect. Def. Brief at 6. Additionally, defendants claim that Miller's deficits are more consistent with borderline intellectual functioning than with mild mental retardation.

It is undisputed that there are conflicting IQ scores in the record. Admin. R. 275, 391. When presented with conflicting medical opinions in a social security disability proceedings, the ALJ must determine credibility and resolve the conflict. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004). An ALJ may only reject a treating or examining physician's opinion that is contradicted by another doctor by providing specific, legitimate reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

In the case at hand, the ALJ gave sufficient reasons supported by substantial evidence in the record to reject the full scale IQ score of 66 found by examining psychologist Dr. Field. First, the ALJ noted that the record has multiple assessments indicating that Miller engaged in malingering. Admin. R. 25. On May 20, 2008, Miller received a diagnosis of malingering, because he allegedly used his experience with drug-induced psychosis to falsely portray the existence of current audiovisual hallucinations. Admin. R. 304-05. On June 27, 2008, Miller received a provisional

diagnosis of malingering, because of discrepancies between his stated stress or disability levels and objective findings. Admin. R. 298. On February 19, 2010, Miller again received a diagnosis of malingering, due to repeated contradictions and inconsistencies in his testimony. Admin. R. 316. Although Dr. Field did not himself feel that Miller was misrepresenting his symptoms, the fact that doctors on multiple occasions have found Miller to be less than credible is a legitimate reason for the ALJ to question the validity of Dr. Field's IQ test on November 17, 2007. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) ("Because the present record supports the ALJ in discounting [Plaintiff's] credibility . . . he was free to disregard Dr. Ngaw's opinion, which was premised on her subjective complaints."); *Soto v. Sec'y of Health & Human Servs.,* 795 F.2d 219, 222 (1st Cir. 1986) (stating the ALJ need not accept an IQ score if there is substantial evidence that claimant was feigning the results).

Second, the ALJ concluded that the surrounding circumstances at the time of testing also cast doubt on Dr. Field's IQ test. Miller underwent IQ testing with Dr. Field less than a month into his hospitalization, prior to which he had been using methamphetamine daily and was not properly medicated. Admin. R. 25. There is evidence in the record that Miller's symptoms may be more indicative of methamphetamine withdrawal than a psychiatric disorder. Admin. R. 27, 297-98. Additionally, the record indicates that Miller functioned significantly better when on medication, and Dr. Field's own observations suggest the same. Tr 28, 272, 279, 280, 343, 349. After administering the IQ test on November 27, 2007, Dr. Field started Miller on a trial of ritalin. Field observed that, "after a successful ritalin trial, patient was noted to be much improved. He is able to read books, write letters . . . and improvement[s] were positively noted by the staff who worked with the patient as well." Admin. R. 279. Dr. Field also noted that Miller performed well on an evaluation,

"especially considering his intelligence quotient." Admin. R. 272. Dr. Field discharged Miller from the hospital in December, with "full remission of his symptoms and an emerging insight." Admin. R. 280. These clinical observations and the corroborating evidence suggest that Miller's functioning improved after the IQ test while he was in the hospital. Accordingly, it was reasonable for the ALJ to conclude that the IQ test Dr. Field administered on November 27, 2007 did not accurately reflected Miller's IQ when properly medicated and free from substance abuse.

Third, the ALJ determined that Miller's adaptive functioning was more consistent with borderline intellectual functioning than with mild mental retardation as the IQ test conducted by Dr. Field indicated. Admin. R. 25. Despite testimony to the contrary, Miller had a driver's license until he received a DUI. Admin. R. 25. Miller also managed to obtain a regular diploma, and he was able to "bathe and feed himself, shop for food, count change, use his computer and do his laundry." Def. Brief at 6; Admin. R. 23, 25, 205-08, 314. Additionally, Miller was able to perform semiskilled work as a clerk in a pharmacy for 30 hours a week, and his employer described him as a "productive employee". Admin. R. 25, 148, 149. Miller's adaptive functioning supports the ALJ's conclusion that the IQ test did not accurately reflect his mental capacity. *See Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005) (concluding the Commissioner may disregard an IQ score that is inconsistent with claimant's demonstrated activities and abilities as evidenced by the record as a whole); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding a valid IQ score is not conclusive of mental retardation when the score is inconsistent with other evidence in the record on claimant's daily activities and behavior).

Finally, another test showed that Miller had an IQ of 74. Admin. R. 391. Combined with the other evidence in the record, this IQ score supports a rational inference that Miller's IQ exceeded

the 60 to 70 range required for Listing 12.05C. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). Accordingly, the ALJ's finding that Miller did not satisfy the criteria for listing 12.05C is supported by substantial evidence.

Because the ALJ rationally concluded that Miller did not have a valid IQ score between 60 and 70, I do not need to examine whether the ALJ adequately considered deficits in adaptive functioning prior to age 22. Further, Miller is not entitled to a remand or an award of benefits.

## CONCLUSION

Miller's claims of error cannot be sustained for the foregoing reasons. The Commissioner's decision is AFFIRMED.

DATED this 29th day of September, 2015.

Robert E. Jones, Senior Judge
United States District Court